# EXHIBIT A

# AGREEMENT
## WASTE MANAGEMENT OF ALAMEDA COUNTY
## AND
## WAREHOUSE UNION LOCAL NO. 6, ILWU

THIS AGREEMENT, made and entered into effective this 1st day of November 2004 is by and between WASTE MANAGEMENT OF ALAMEDA COUNTY for its districts referenced in Section I (a) below, hereinafter referred to as the Company, and the WAREHOUSE UNION LOCAL No. 6, ILWU, hereinafter referred to as the Union. The terms of this Agreement as herein stated are the sole terms of agreement between the respective parties.

## WITNESSETH

**SECTION 1.**          **RECOGNITION AND JURISDICTION**

(a)          The provisions of this Agreement shall apply to the following bargaining unit.

All full-time and regular part-time office clericals, including customer service representatives (CSRs), lead. CSRs, payroll clerks, cash processing clerks, accounts payables clerks, collections clerks, accounts receivable clerks, operations clerks, dispatch clerks, maintenance clerks, switchboard operators, receptionists, data entry clerks and mail room clerks employed by the Employer at its facilities as follows: Waste Management of Alameda County, 172 98th Avenue, Oakland, CA; Davis Street SMART, 2615 Davis Street, San Leandro, CA; 22770 Main Street, Hayward, CA; Livermore/Dublin Disposal, 6175 South Front Road, Livermore, CA; Altamont Landfill and Recycling Center, 10840 Altamont Pass Road, Livermore, CA; Tri-Cities Recycling & Disposal Facility, 7010 Auto Mall Parkway, Fremont, CA; excluding all managerial employees, administrative assistants, scale clerks, systems operators, gas plant technicians, field technicians, claims coordinators, inside and outside sales persons, dispatchers, temporary employees on the payroll of another employer, all other employees, guards and supervisors as defined in the Act.

(b)          Membership in the Union on or after the thirty-first (31st) day following the beginning of employment of employees covered by this Agreement, or the effective date of this Agreement or the date upon which this Agreement is executed, whichever is the later, shall be required as a condition of employment. Tender of the Union's periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining such membership, shall, for the purposes of this Section, be considered membership in the Union.

(c)          The Company and the Union agree to use the following language for payroll deduction of Union dues:

I, the undersigned Employee of Waste Management of Alameda County, hereby authorize and direct the said Company to deduct on my first payday of each month from

my wages now or hereafter due me, and pay to Warehouse Union Local 6, ILWU, my membership dues and Initiation as a member of that organization. I agree to hold the Company harmless from loss from any judgments of a court of competent jurisdiction and from any order of the Labor Commissioner or other agency of government in connection with or arising from any deductions made pursuant to this assignment. No other assignment or order exists in connection with this transaction. This assignment shall be irrevocable for a period of one year from the date hereof and shall remain in full force and effect thereafter until revoked in writing by the undersigned.

Date: _____        _____
                                 Employee's Signature

                                 _____
                                 Steward's Signature

(d)        The Employer upon written request of the Union shall discharge any employee, after seven (7) calendar days after receipt of such notice, who fails to tender the periodic dues and/or initiation fees uniformly required by the Union as a condition of acquiring or retaining membership in the Union. If the Union has notified the Employer in writing prior of the expiration of the seven (7) days, that the employee has paid the amounts owing, the discharge shall not take place.

(e)        The Union agrees to indemnify and hold the Employer harmless from any and all suits, claims, demands, judgments or any other form of liability that may arise out of or by reason of the application of the provisions of this Section.

**SECTION 2.        SENIORITY**

(a)        New employees shall be regarded as probationary employees until they have completed eighty (80) working days of actual work within a four-month period. Probationary employees shall have no seniority, and may be laid off or discharged with or without cause in the sole discretion of the Employer. Upon successful completion of the probationary period, the employee shall be placed on the seniority list, according to his/her last date of hire within the bargaining unit. Employee hired on the same day shall be listed in alphabetical order. Probationary employees shall receive health and welfare benefits after 90 calendar days of employment and shall receive no other benefits under this agreement (see Section 15(a) for sick leave eligibility), with the exception of the rate of pay provided. A regular employee shall be defined as an employee who has completed his/her probationary period and who has therefore acquired seniority.

2.

(b)    An employee shall forfeit any right to seniority and the employee's name shall be removed from the seniority list and employment terminated, in the event the employee:

   (1)    Quits/retires;

   (2)    Is discharged;

   (3)    Is absent from work three (3) consecutive working days without prior notification to and authorization from the Employer (which shall be deemed a quit);

   (4)    Is not in active employment for a period of twelve (12) months due to layoff, or eighteen (18) months in the case of work-related or nonwork-related disability, provided that employees on leave for a work-related disability shall have their seniority restored if they are released to return to work and are able to perform the essential functions of their job, with or without reasonable accommodation, within a period of thirty-six (36) months following the start of their work-related disability leave.

   (5)    Is laid off and fails to report to work within 72 hours after having been recalled by certified mail (which shall be deemed a quit).

(c)    In the event of a reduction in force, bargaining unit employees will be laid off from the affected classification on the basis of seniority, so long as the remaining employees are capable of performing the remaining work.  An employee laid off from his/her classification shall have the option at the time of a layoff to displace the least senior employee provided the senior employee (with refresher training as maybe appropriate) possesses the qualifications and ability to proficiently perform the available work.  The employee will be provided a minimum 90 days training and an evaluation period when they transfer to a new classification.  The last person laid off shall be recalled first.

(d)    Employees are required to notify the Company of their present address or of any change in their post office address and telephone number. The Employer shall be fully entitled to rely on same, and no employee will receive consideration who fails to receive any notice provided by this Agreement because of his failure to comply with this provision.

(e)    In the event of a permanent vacancy in a bargaining unit position, the Employer will post the position for not less than five (5) working days.  The position shall be posted on all Local 6 bulletin boards at all sites and a copy given to the Shop Steward at the time of posting.  The position will be awarded by the Employer based on its judgment as to the employee's qualifications, ability and seniority with seniority being the deciding factor where job qualifications and ability are equal.  Employees who have been suspended within the past nine (9) months shall not be eligible to bid for a vacant

position. An employee who is awarded a job vacancy under this provision shall not be permitted to utilize the job bidding procedure again for eight (8) months.

In the event that the Employer awards a vacant position to an applicant who has less seniority than another applicant or applicant(s), the Employer agrees to verbally explain to any of the more senior applicants the reason(s) why that applicant was not selected for the vacant position.

Should the Employer determine an employee is unable to satisfactorily perform his or her job duties during the first ninety days in his or her new position, the Employer shall have the right to return an employee to his or her prior job position, provided the Employer provides the employee with at least one written evaluation during that period.

(f)     Scheduled part-time employees are those employees employed to work thirty (30) hours or less per week. Part-time employees shall not acquire or accrue seniority, nor shall they be eligible for any of the fringe benefits contained in this Agreement. Scheduled part-time employees will not displace existing regular full-time bargaining unit positions and will be laid off before any regular full-time employees provided the regular full-time employee accepts the work schedule provided at the time of the lay-off.

(g)     At the time a position is vacant the company will fill the positions in accordance with Section 2(e) and if there are no successful bidders then the position will be posted within Waste Management. If the vacancy is posted to external outreach sources the company will send notification of the open position to the Local 6 Business Agent, so that the Union may recommend prospective candidates.

(h)     In the event a bargaining unit employee accepts a position with the Company that is outside the bargaining unit he/she shall lose all accumulated seniority under this Agreement.

## SECTION 3.     MANAGEMENT RIGHTS

(a)         The Union recognizes the Company's inherent and traditional right to manage its business, to establish reasonable work rules and to require their observance. The Company shall have the right to direct the working force in the performance of their work assignments, including the assignment of jobs and equipment promotions and demotions, as well as to regulate the general working conditions and the efficiency of operations. The right to determine the location and extent of its operations and their commencement expansion, relocation, curtailment or discontinuance in whole or in part the right to control productivity; the right to determine the schedule of work and of operations, including the right to require employees to work overtime; the right to determine the job content and requirements of any job or classification; the right to determine the number and qualifications of employees needed by the Employer at any time and the number and qualifications of employees who shall operate on any given job, operation or unit of equipment; the right to subcontract bargaining unit work; the right to monitor employee performance and to utilize electronic

4.

monitoring, including audio and video recording devices but will not conflict with the privacy protections afforded by State and Federal law, the right to establish and reestablish standards of quality and quantity relating to employee performance; the right of access to all computer terminals, files, desks, and lockers, and the right to have bargaining unit work performed by supervisors and others outside the bargaining unit with no intent to displace available bargaining unit employees from regular positions. The above enumeration is by way of example and is not a limitation and the right of the Company in the operations of its business is unlimited except as it may be expressly and specifically restricted by the provisions of this Agreement, and this Agreement is the sole agreement between the parties.

(b)    The failure of the Employer to exercise any function, power or right reserved or retained by it, or the exercise of any power, function or right in a particular manner, shall not be deemed a waiver of the right of the Employer to exercise such power, function, authority or right, or to preclude the Employer from exercising the same in some other manner, so long as it does not conflict with an express provision of this Agreement.

**SECTION 4.    DISCHARGE**

(a)    The Company shall have the right to discharge any employee for absenteeism, dishonesty, insubordination, illicit substance abuse, incompetence, willful negligence, or failure to observe Company safety and house rules and regulations, which must be conspicuously posted.

(b)    If an employee feels he/she has been unjustly discharged, he/she shall have the right to appeal his/her case to Step 3 of the Grievance Procedure. Such appeal must be filed in writing by the Union within five (5) working days from the date of discharge or suspension. In case the discharge is found to be unjustifiable, payment for lost time, or reinstatement with or without payment for lost time maybe a mutual resolution of the Grievance or may be ordered by an Arbitrator.

(c)    Any discharged employee shall, upon request be furnished the reason for his/her discharge in writing; All copies of discharges and suspensions will be forwarded to Local 6 by Certified Mail.

(d)    All complaints regarding discharges shall be given preference over any other matter pending between the Parties, and a written decision shall be given within ten (10) days.

(e)    The Company shall forfeit the right to discharge or suspend any employee for a particular offense if no action has been taken within fourteen (14) days of the Company's knowledge of the occurrence of the offense and the employee's involvement. This paragraph (e) shall be inapplicable in cases of fraud, theft and criminal conduct.

5.

(f)    An employee who has no disciplinary action during the prior twelve (12) months, will not have their prior discipline record taken into consideration when determining the appropriate level of disciplinary action for a current offense.

## SECTION 5.        STEWARD

A Steward shall be provided for each location, such Steward to be selected by employees on the job. The duty of the Steward shall be to report to the Union any grievances which may arise and which cannot be adjusted on the job. It is understood and agreed that the Steward shall have no power to order any changes.

## SECTION 6.        BUSINESS AGENT

The Business Agent or other elected official of the local union shall be allowed to talk with the employees for the purpose of ascertaining whether this Agreement is being observed or to assist in adjusting grievances, and any discussions shall take place in non-work areas. Any discussions or meetings requested during the work time of any employee must be arranged in advance with the Department Manager. This privilege shall be exercised so that no time is lost to the Company unnecessarily. The Union representative shall notify the manager or his/her designee before or upon coming to Company property and shall sign the Company Visitor Register and comply with other security procedures upon arrival.

## SECTION 7.        HOLIDAYS

(a)    There shall be nine (9) paid holidays: New Year's Day, Memorial Day, July 4th, Labor Day, Thanksgiving, Christmas, and three (3) Floating Holidays. For each paid Holiday, employees shall be paid eight (8) hours at the straight-time rate. All work performed on a Holiday will be assigned on a rotational seniority basis by classification. Such time worked will be compensated at the rate of double time and a half the basic rate of pay. The Floating Holidays shall be observed on a date mutually agreed to by the Company and the Individual employee.

(b)    Notice of work on any of the above holidays shall be given at least five (5) working days prior to the holiday, except in unusual emergencies.

(c)    To be eligible for Holiday Pay, an employee must:

(1)    have completed their probationary period;

(2)    be a scheduled full-time/part-time employee covered by this Agreement: and

(3)    have worked the last scheduled working day before and the first scheduled working day after the holiday.

(d)    In the event a holiday falls during the vacation period of an otherwise eligible employee, that employee shall be entitled to Holiday Pay for each

6.

holiday occurring during the employee's vacation, provided the employee works the last scheduled working day before and the first scheduled working day after the vacation.

## SECTION 8.          HOURS

(a)    The normal work week for full-time employees shall consist of forty (40) hours worked in four (4) or (5) days, with a one half (1/2) to one (1) hour unpaid lunch.

Part-time employees workweek shall consist of a consistent schedule of less than thirty (30) hours. Part-time employees will be paid a minimum of four (4) hours straight time rate in any given workday.

(b)    There shall be two (2) fifteen (15) minute rest periods per day, for each employee, one in the morning and one in the afternoon.

(c)    All time worked in excess of forty (40) hours per week shall be paid for at the rate of time and one half (1 ½) the regular straight time hourly rate of pay. One and one half (1 ½) times the regular straight time hourly rate shall be paid on a daily basis for all work performed in excess of the eight (8) hour workday or the ten (10) hour workday. Employees who work seven (7) consecutive days in any work week shall be paid two (2) times the regular straight time hourly rate of pay for all hours worked on such seventh (7) day. There shall be no duplication or pyramiding of overtime payments under this Agreement.

(d)    Employees are required to work overtime in accordance with the needs of the business, with reasonable advance notice.

(e)    The Employer may implement start times upon (1) week notice to the affected employee, except in case of emergencies. Employees are required to be at their workstation ready for work not later than their scheduled start time.

All paid time off will be counted as time worked and calculated as straight time for purposes of vacation, sick leave, holiday and seniority accruals.

(f)    Upon reporting for work at their scheduled starting time, each regular full-time employee shall be guaranteed eight (8) hours work or pay on the employee's regularly scheduled work days, including scheduled working holidays, unless the employee leaves early.

(g)    Each regular full-time employee reporting for work on time as scheduled shall be guaranteed four (4) hours work or pay if called to work on a non-scheduled work day, unless the Employee leaves early.

## SECTION 9.          NEW PROCESSES & NEW EQUIPMENT

The Company shall notify the Union three (3) weeks in advance of any permanent lay-off of seniority employees which is going to result from the installation of new equipment

7.

or new processes in order that the impact of such lay-off upon the Employees may be discussed.

**SECTION 10.    MILITARY SERVICE**

Any employee covered by this Agreement who has seniority, who during the period of this Agreement is inducted into the land, air or naval forces of the United States of America, whether voluntarily or by government order, shall be accorded all rights provided under the Veteran's' Reemployment Rights Act.

**SECTION 11.    TRANSPORTATION**

When an employee is required by the Company to use their personal vehicle to drive from one site to another, the employee will be compensated for mileage from their regular job location to the new site and return at the applicable IRS rate per mile for the duration of this Agreement.

**SECTION 12.    NON DISCRIMINATION**

The Company and the Union, agree that in the administration of this agreement there will be no discrimination by the Company or the Union because of an employee's race, creed, sex, religion, national origin, disability, age or union activity within the meaning of applicable state and federal laws. Nothing in this Agreement shall be construed to prevent, preclude or inhibit the Company's compliance with Americans with Disabilities Act.

**SECTION 13.    HEALTH & SAFETY**

The Employer shall make every effort to provide and maintain safe working conditions and industrial health protection for employees. All work performed will be in compliance with all safety standards and OSHA regulations. Because the Labor Department has given the State of California the authority to regulate and enforce Industrial safety as permitted by the Occupational Safety and Health Act, Employer agrees to abide by the regulations outlined by CAL OSHA.

**SECTION 14.    VACATION**

(a)    Each regular full-time employee, not in their first year of employment, who as of January 1st has been employed by the Employer for one (1) full calendar year or more and who has worked a minimum of one thousand (1,000) straight time hours during the preceding calendar year shall be entitled to a paid vacation in accordance with the following:

| Years of Service | Vacation |
|---|---|
| One (1) year | Two (2) weeks |
| Six (6) years | Three (3) weeks |
| Fifteen (15) years | Four (4) weeks |

8.

|  |  |
|---|---|
| Twenty (20) years | Five (5) weeks |

For the purpose of this Section, years of service shall mean calendar years (January 1 through December 31) of unbroken seniority with the Company which shall in no event be calculated from a date prior to the time the employee actually commenced working for the Company.

(b)    For new employees during an employee's first year of employment, the employee shall not be eligible for vacation accrual until the completion of their probationary period. The employee is eligible to utilize vacation accruals for the first year on January 1st. Upon the completion of the probationary period the employee shall be entitled to vacation accrual back to date of hire. Accrual will be based on 80 hours divided by 52 pay periods or (1.538 hours per pay period). The employee must work a minimum of one hundred and fifty (150) hours in any calendar month. All paid time will be counted.

(c)    In computing straight-time hours as that term is used in this Section, all hours worked by the employee for the Company shall be counted, but each premium or overtime hour worked shall count as only one (1) straight-time hour. All paid time will be counted toward satisfying the foregoing 1,000 straight-time hour eligibility requirement. Time lost, not to exceed 300 hours as a result of an accident, as recognized by the Workers' Compensation board, suffered during the course of employment shall be considered as time worked under the provisions of this Agreement.  Paid vacation hours in the previous anniversary year shall count as qualifying hours in determining an employee's entitlement to vacation.

(d)    For employees who have not been in the service of the Company for more than one (1) year and who fail to qualify for a full vacation, vacation benefits shall be pro-rated in accordance with the following schedule. During the employee's probationary period there is no accrual of vacation until the employee completes the probationary period and the pro-ration will be as specified in section 14(b) above. An employee who is terminated or laid off prior to the completion of the probationary period will not be entitled to vacation pay.

(e)    Time off for vacation pursuant to the foregoing pro-ration provision shall be allowed only in full week units. If the application of this provision results in an employee being credited with less than five (5) full days vacation, the employee shall have the option to either use their vacation credit or be paid it.   Similarly, if the application of this provision results in an employee being credited with more than five (5) but less than ten (10), or more than ten (10) but less that fifteen (15) days of vacation, the employee will be scheduled for a five (5) or ten (10) day vacation as the case may be and will be paid the excess allowance cash.

Employees qualifying for pro-rated vacation whose seniority and employment is terminated for any reason shall receive in cash the prorated vacation for which they are eligible at the time of termination.

9.

(f)    Vacation pay shall be based on an employee's straight time hourly rate of pay at the time the vacation is taken, and shall be paid on the basis of forty (40) hours for each week of vacation.

(g)    Vacation pay will be paid on the last regular pay day preceding the employee's vacation.

(h)    An employee's vacation must be taken within the calendar year within which the employee has become eligible for the vacation. Vacation may not be carried over into the following calendar year.

(i)    In scheduling vacations, consideration will be given to the vacation time preference of employees and to their seniority within each location of the Employer, with the Employer making the final determination as to the number of employees within any Department and location that may be on vacation at any time.

(j)    No employee shall have the privilege of drawing the vacation pay and continuing to work in lieu of taking the week.

(k)    Employees shall have the option to take up to forty hours of vacation pay in four hour increments. Such days must be approved at least one (1) week in advance by the employee's Supervisor. All such days must have been utilized or scheduled prior to November 1st, with unused days being paid to the employee by December 15.

## SECTION 15.    SICK BENEFIT ALLOWANCE

(a)    Every employee covered by this Agreement who has been continuously employed by the Company for a period of at least one (1) year shall thereafter be entitled to nine (9) days (72 straight-time hours) sick leave with pay per calendar year. Sick leave pay shall commence with the first day of absence. Sick leave for the period between an employee's first anniversary date and the commencement of the following calendar year (January 1) shall be pro-rated.

(b)    Paid sick leave is an emergency benefit designed to relieve hardship and shall only be applicable in the case of absences necessitated by bona fide illness or injury. Employees are required to report absences to their immediate supervisor as soon as possible, but not later than thirty (30) minutes prior to their scheduled starting time.

(c)    Unused sick leave, up to a maximum of thirty-six (36) days, may be accumulated and carried over from year to year. Days accumulated at the end of the year in excess of thirty-six days will be paid and employees also can request days in excess of fifteen (15) days to be paid in accordance with IRS regulations.

(d)    Sick leave shall be integrated with the Employee's Workers, Compensation and State Disability Benefits, but the sum of the two shall not exceed a normal straight time days pay for the employee. Such integration shall be automatic.

10.

Only the amount paid by the Employer shall be deducted from the employee's earned sick leave.

(e)    Job injury: Whenever an employee who has been injured on the job and has returned to work is requested by the Company's compensation doctor to leave work to report for treatment during working hours, he/she shall be allowed time off up to two (2) hours for such treatment without loss of pay.

(f)    Every January 1, the Company shall give every employee a statement setting forth the balance of their accumulated sick days.

(g)    In the event that an active employee has not used all of his accrued sick leave at the time of retirement as defined by the Industrial Employers and Distributors Association or death, the Company agrees to pay the employee's sick pay accumulated but not used.

## SECTION 16.    HEALTH AND WELFARE

(a) The Company will offer its group Health Plan benefits to all full-time employees following completion of ninety (90) calendar days of employment. Employees and dependents may participate in the Company provided health plan on the same basis as other members of the group plan. The Company reserves the right to amend or modify any part of the Company health plan, including the plan provider and employee contributions, but will not do so unless the plan is likewise amended or modified for non-bargaining unit members. Any plan increases/decreases during the life of this Agreement may result in increases/decreases to individual employee contributions but said increases/decreases shall be the same as the increases/decreases for other non-bargaining unit members in the Company plans.

(b) Any employee who can establish, to the satisfaction of the Company, coverage under another health insurance plan comparable to the coverage of the Company's plan, will be entitled to waive insurance coverage by the Company and receive in place of such insurance coverage the monthly opt-out payment received by non-bargaining unit members under the Company plans. Proof of alternative insurance must be provided annually. Should an employee under this program desire to re-enter the Company's plan, such employee will be subject to the normal eligibility requirements of the Company's plan.

11.

## SECTION 17.     PENSION

Effective upon execution of this Agreement, the Company agrees to make the following pension contributions into the Industrial Employers and Distributors Association Pension Trust Fund:

(A)     To bargaining unit employees who had eighty (80) or more hours of service in the preceding calendar month:

| | |
|---|---|
| EXECUTION | $351.80 per month |
| June 1, 2005 | $386.46 per month |
| June 1, 2006 | $407.26 per month |
| June 1, 2007 | $407.26 per month plus 100% of any monthly increase in contribution as directed by the Pension Trust Agreement for the period 6/1/07 until 5/31/08. |
| June 1, 2008 | Company's 6/1/07 monthly contribution rate set forth above plus 100% of any monthly increase in contribution as directed by the Pension Trust Agreement for the period 6/1/08 until 5/31/09. |
| June 1, 2009 | Company's 6/1/08 monthly contribution rate set forth above plus 100% of any monthly increase in contribution as directed by the Pension Trust Agreement for the period 6/1/09 until 5/31/10. |

(b)    The Company agrees to make the following hourly pension contributions to employees who work less than eighty (80) hours per month in the preceding calendar month:

| EXECUTION | $2.03 per hour worked |
|---|---|
| June 1, 2005 | $2.23 per hour worked |
| June 1, 2006 | $2.35 per hour worked |
| June 1, 2007 | $2.35 per hour worked plus 100% of any monthly increase in hourly contribution as directed by the Pension Trust Agreement for the period 6/1/07 until 5/31/08. |
| June 1, 2008 | Company's 6/1/07 hourly contribution rate set forth above plus 100% of any hourly increase in contribution as directed by the Pension Trust Agreement for the period 6/1/08 until 5/31/09. |
| June 1, 2009 | Company's 6/1/08 hourly contribution rate set forth above plus 100% of any hourly increase in contribution as directed by the Pension Trust Agreement for the period 6/1/09 until 5/31/10. |

## SECTION 18.    WAGES AND JOB CLASSIFICATIONS

(a) The chart below lists the new hourly wage rates for each employee classification listed upon execution of this Agreement:

| Job title | 11/1/04 | 11/1/05 | 11/1/06 | 11/1/07 | 11/1/08 |
|---|---|---|---|---|---|
| Multi-lingual CSR | $17.79 | $18.39 | $18.99 | $19.59 | $20.24 |
| Multi-lingual CSSR | $18.29 | $18.89 | $19.49 | $20.09 | $20.74 |
| Cash Processing | $15.79 | $16.39 | $16.99 | $17.59 | $ 18.24 |

13.

| | | | | | |
|---|---|---|---|---|---|
| CSR | $15.79 | $16.39 | $16.99 | $17.59 | $18.24 |
| CSSR | $16.29 | $16.89 | $17.49 | $18.09 | $18.74 |
| Dispatch Clerks | $15.79 | $16.39 | $16.99 | $17.59 | $18.24 |
| Payroll | $15.79 | $16.39 | $16.99 | $17.59 | $18.24 |
| Service Machine | $15.79 | $16.39 | $16.99 | $17.59 | $18.24 |
| Collections Clerk | $15.29 | $15.89 | $16.49 | $17.09 | $17.74 |
| Maintenance Clerk | $15.29 | $15.89 | $16.49 | $17.09 | $17.74 |
| Operations Clerk | $15.29 | $15.89 | $16.49 | $17.09 | $17.74 |
| Accounts Payable | $18.02 | $18.62 | $19.22 | $19.82 | $20.47 |
| Receptionist/Switchboard | $14.79 | $15.39 | $15.99 | $16.59 | $17.24 |
| Mailroom Clerk | $13.79 | $14.39 | $14.99 | $15.59 | $16.24 |
| Data Entry | $13.29 | $13.89 | $14.49 | $15.09 | $15.74 |

(b)     New hires will be paid 90% of the applicable wage rates for the first six months of employment. Thereafter, new hires shall be paid at 100% of the applicable rates set forth in Section 18(a).

(c)     All current employees earning above the base hourly wage rates set forth in Section 19(a) shall receive an annual increase in their existing hourly rate as set forth below:

| November 1, 2004 | November 1, 2005 | November 1, 2006 | November 1, 2007 | November 1, 2008 |
|---|---|---|---|---|
| $0.75 | $0.60 | $0.60 | $0.60 | $0.65 |

(d)     Any employee designated as "lead" shall receive a $1.50 per hour premium to their applicable wage rate. The "lead" premium shall apply to all hours paid to the employee. An employee designated as a "trainer" shall receive a $1.25 per hour premium to their applicable base wage rate. The "trainer" premium shall apply only to hours actually worked while performing the duties of a trainer.

14.

(e)    Any employee who transfers or moves to another job classification shall receive the applicable base hourly rate for that job classification.    However, if prior to transferring or moving job classifications, the employee was earning a premium above his or her classification's applicable rate as set forth in Attachment A, the employee will continue to receive said "premium" above the applicable base wage rate.

## SECTION 19.    FUNERAL LEAVE

In the event of a death in the immediate family of an employee who has seniority with the Company, the employee shall, upon request, be granted such time off with pay as is necessary to make arrangements for the funeral and/or attend same, not to exceed three (3) consecutive regularly scheduled working days, or five (5) consecutive regular scheduled working days for attending a funeral outside the State of California, ending with the day following the date of the funeral. This provision does not apply if the death occurs during the employee's paid vacation or holiday or while the employee is on leave of absence, lay off or sick leave. For the purposes of this provision, the immediate family shall be restricted to father, mother, brother, sister, spouse, child, foster child, grandparents, grandchildren, mother-in-law, father-in-law, brother-in-law, sister-in-law, step children or step parents. At the request of the Company, the employee shall furnish proof of death, relationship and attendance at the funeral. Funeral leave applies only in instances in which the employee attends the funeral or is required to make funeral arrangements.

## SECTION 20.    GRIEVANCE PROCEDURE

(a)    For the purpose of this Agreement, the term "grievance" is defined as a dispute between the Employer and any employees or the Union regarding the interpretation of any express provision of this Agreement or any question of fact arising out of any alleged violation of an express provision of this Agreement which is not otherwise excluded from this grievance procedure.

(b)    Should any grievance arise under and during the term of this Agreement, the employees, the Union and the Employer shall observe the following procedure:

Step 1. Within five (5) working days of the occurrence of a grievance, attempts at settlement will be made in the first instance by the employee concerned and the immediate Supervisor, in the presence of the Shop Steward if the employee so desires. Failing settlement, the aggrieved employee shall submit the grievance within five (5) working days to the Department Manager, in writing, indicating the facts, the provision(s) of the Agreement concerned and the relief sought, and shall date and sign it.

Step 2. A conference will be held between the Shop Steward, the aggrieved employee, and the Department Manager within five (5) working days. Failing settlement, the

grievance shall be referred by the Shop Steward to the General Manager in writing within five (5) working days from that conference.

Step 3. A conference will be held between a Local 6 Business Representative, the aggrieved employee and the Shop Steward and the General Manager and the Department Manager involved within ten (10) working days. The Company will submit a written response to the Union at this meeting or within five (5) working days. In the event there is no agreement upon the settlement of the grievance, the matter may be referred to arbitration by serving a written request for arbitration on the other party within thirty (30) days of the conference in Step 3.

Step 4. If the Union and the Employer cannot mutually agree on an arbitrator, the Federal Mediation and Conciliation Service shall be requested to submit a panel of seven (7) established arbitrators who are registered with the National Academy of Arbitrators. The requesting party shall first strike three (3) names from the panel submitted by the Federal Mediation and Conciliation Service and the other party shall then strike three (3) additional names from the list.

(c)    Grievances must be initiated and advanced from one step to the next in accordance with the foregoing procedure and time limits, or the grievance shall be null and void, and waived for all purposes.    Any time limit may be extended by mutual written consent of the Employer and the Union.

(d)    The arbitrator selected shall have no power or authority to amend, alter or modify this Agreement, but shall be limited to deciding whether or not a violation of its express terms has been committed. The arbitrator shall have no power or jurisdiction to consider any alleged practice or oral understanding which existed prior to April 1, 1999 which is not incorporated in writing as part of this Agreement.

The decision of the arbitrator shall be final and binding on employees, Union, and the Company, provided such decision shall be within the scope and terms of this Agreement and shall not add to, subtract from, alter or change the scope and terms of this Agreement.

(e)    The expenses of the representatives appointed by the Union, its witnesses and other representatives shall be paid by the Union, and the expenses of the representatives appointed by the Employer, its witnesses and other representatives shall be paid by the Employer. Any expenses incurred by and the fees of the neutral arbitrator shall be borne equally by the Parties. Any transcript of the proceeding which is taken, shall be paid for by the party requesting same, except the other party shall pay the cost of its own copy.

16.

## SECTION 21.    BULLETIN BOARDS

The Employer shall provide a bulletin board at each Employer location in places reasonably accessible to the employees covered by this Agreement for the purpose of posting notices indicating times and places of Union meetings and social events, as well as benefit information.

## SECTION 22.    LEAVE OF ABSENCE

(a)    Family, medical, and pregnancy leaves shall be granted in accordance with applicable laws.

(b)    Medical verification of illness, injury, or pregnancy may be requested by the employer.

(c)    During an approved leave of absence the employee shall not engage in gainful employment unless authorized to do so by written permission. The Employer may terminate any employee who violates the terms and conditions of the written permission for leave or extension thereof.

(d)    In order to qualify for illness or injury leaves of absence, an employee must be receiving State Disability Insurance or Workers' Compensation Insurance to the extent permitted by State and Federal Law. The employee shall abide by all State and Federal laws pertaining to Leaves of Absence.

(e)    The Employer may at its discretion grant requests for leave of absence based upon good and compelling cause for reasons other than those listed above. Extensions of leaves of absence may likewise be approved at the Employer's discretion. The denial of any request may be appealed by the employee (accompanied by the Steward or Business Agent if desired by the employee) to the General Manager for final determination.

(f)    **Medical Leaves:** if you are on unpaid leave for 26 weeks or less, upon return from medical leave, you will be returned to the same or an equivalent position with no loss in seniority. For medical leaves in excess of 26 weeks, the Company will use reasonable efforts to hold the same or an equivalent position until you can return to work. However, the Company reserves the right to fill the position. If it becomes necessary to fill the position, the Company will attempt to place the employee in the next position for which the employee is qualified and which has similar pay and status.

## SECTION 23.    MEDICAL OR DENTAL APPOINTMENTS

Medical or dental appointments shall be made outside of work time where possible, and if not possible, from Tuesday through Friday during the first two (2) hours of the day's shift or the last two (2) hours of the day's shift whenever possible, and may be deducted from accumulated sick leave. As much advance notice as possible, but at least three (3) work days advance notice shall be given to the immediate supervisor; but excluding emergency cases with appropriate documentation provided by the employee.

## SECTION 24.    JURY DUTY PAY

Any employees impaneled in a jury and/or performing active jury duty, shall be paid the difference between jury duty pay and their regular straight time wage up to a maximum of twenty (20) working days in any year of the Agreement, subject to verification of jury service and the amount of compensation received. An employee released from jury service prior to the midpoint of the shift will return to work to finish the shift. Any employee who is placed in "on call" status for jury service shall report to work, being released from work if called that day to active jury service. The employee shall cooperate to lose the least amount of work time as possible. Company will not deduct jury duty pay if it remains under ten ($10) dollars per day of jury service.

## SECTION 25.    NO STRIKES -- NO LOCKOUTS

(a)    The Union agrees that it will not support strikes or picket lines by unions not parties to this Agreement unless such union's right to organize peacefully has been interfered with by the Employer or unless it has been denied the means of a peaceful settlement of its dispute.

The Union and its representatives agree that they will enforce full compliance with all terms and provisions of the Agreement on the part of members of the Union.

The Union, its members and representatives agree that it and they will not engage in, authorize, sanction or support any strike, slowdown, stoppage of work, curtailment of production, concerted refusal of overtime work, refusal to operate designated equipment (provided such equipment is safe and sound) or to perform customary duties, or to reject promotions without justifiable personal reasons.

Neither the Union nor any representative thereof shall engage in job action for the purpose of effecting changes in the existing practices, nor to effect a change of personnel or operations of management or of employees not covered by this Agreement.

(b)    Any action of the employees; leaving jobs for their own protection in cases of a legally declared strike by some other union directly working on the job, if such strike is sanctioned and approved by the Labor Body, or Council having jurisdiction, shall not constitute a violation of this Agreement.

## SECTION 26.    TEMPORARY EMPLOYEES

(a)    The Company shall notify the Union of each temporary employee before the temporary employee begins to perform bargaining unit work.

(b)    Temporary employees will not displace existing full-time bargaining unit positions, and will be laid off before any regular bargaining-unit employees. Any vacated bargaining-unit position will not be filled permanently with a temporary employee, but will be filled with a bargaining-unit employee through job bidding.

18.

(c)     At no time shall the total number of temporary employees, excluding up to two (2) temporary employees covering for employees on medical leave, exceed eight percent (8%) of the total of bargaining-unit employees. A temporary position shall be posted for seniority bid after period of six (6) months; unless the temporary employee is a replacement for a regular employee who is on extended medical leave.

(d)     However, except for a temporary employee working on a special project or covering for an employee on medical leave, a temporary employee shall begin working under this Agreement as a probationary employee after ninety (90) days of work as a temporary employee in a nine (9) month period. Upon completion of the probationary period, all hours worked shall count toward such employee's seniority under this Agreement. Only hours worked in the bargaining unit will count, not hours worked as a temporary employee.

## SECTION 27.        PAYDAY AND PAYROLL DEDUCTIONS

Office employees are paid weekly on Friday. If the scheduled payday falls on a holiday, employees are paid on the preceding work day. All paychecks include a statement of earnings and deductions on the check stub. Only payroll deductions required by law are made from paychecks, unless the employee has authorized other deductions.

## SECTION 28.        UNION OFFICIAL SENIORITY

Any employee who is elected to full-time office in the Union, which office requires their absence from the service of the Company, shall be granted a leave of absence therefore without loss of seniority entitling them upon retirement from such office to reinstatement consistent with this seniority, provided, however, that such leave of absence shall not extend beyond the term of this Agreement, unless extended by mutual consent.

## SECTION 29.        SCOPE OF AGREEMENT AND SEPARABILITY OF PROVISIONS

(a)     Scope of Agreement: Except as otherwise specifically provided herein, this Agreement and the parties' July 12, 2005, No Strike/No Lockout Letter of Understanding fully and completely incorporates the understanding of the Parties hereto and constitutes the sole and entire agreement between the Parties on any and all matters subject to collective bargaining. Neither Party shall, during the term of this Agreement demand any change therein, nor shall either party be required to bargain with respect to any matter. Without limiting the generality of the above, both Parties in their own behalf waive any right to demand of the other any negotiating, bargaining, or change during the life of this Agreement with respect to Pensions, Retirement, Health and Welfare, Annuity or Insurance Plans, or respecting any questions of wages, hours, or any other terms or conditions of employment provided that nothing herein shall prohibit the parties from changing the terms of this Agreement by mutual agreement.

(b)     **Separability of Provisions:** Should any section, clause or provision of this Agreement be declared illegal by final judgment of a court of competent jurisdiction,

19.

such invalidation of such section, clause or provision shall not invalidate the remaining portion hereof, and such remaining portions shall remain in full force and effect for the duration of this Agreement.

Upon such invalidation, the Parties agree immediately to meet and negotiate substitute provisions for such parts or provisions rendered or declared illegal or an unfair labor practice. In the event the Parties are unable to agree upon substitute provisions, the dispute may at the request of either the Company or the Union be referred to arbitration for settlement pursuant to the provisions of Section 19 hereof, but the power of the arbitrator shall be restricted and limited to determining a substitute provision to provide the same specific objective and purpose of the provision rendered or declared illegal.

(c) **Unlawful Action Not Required:** The Parties agree that neither will willfully require the other to do or perform any act prohibited by law.

## SECTION 30 DURATION OF AGREEMENT

This Agreement shall be effective November 1, 2004 and shall remain in full force and effect to and including October 31, 2009 , and shall continue thereafter from year to year unless at least sixty (60) days prior to October 31, 2009 , or to the thirty-first (31st)

day of December of any subsequent year, either party shall file written notice with the other of its desire to amend, modify, or terminate this Agreement.

**WAREHOUSE UNION LOCAL 6, ILWU**

By: _____

    Efren Alarcon, President

Date: _3/25/06_

By: _____

    Fred Pecker, Secretary-Treasurer

Date: _3/6/06_

By: _____

    Victor Pamiroyan, Business Agent

Date: _3-6-06_

By: _____

    Anjanette Levingston, Chief Steward

Date: _3/6/06_

By: _____

    Amy Gallow, Assistant Steward

Date: _3/6/06_

By: _____

    Vicki Crenshaw, Committee Person

Date: _3/8/06_

Firmwide:80844622.1 046609.1210

**WASTE MANAGEMENT OF ALAMEDA COUNTY**

By: _R.W. Angell_

    Robert Angell, District Manager

Date: _03-06-06_

By: _____

    Gary Hollandsworth, Senior HR Manager

Date: _3/6/06_

21.

## LETTER OF UNDERSTANDING

## WASTE MANAGEMENT OF ALAMEDA COUNTY AND WAREHOUSE UNION LOCAL 6, ILWU

The Employer and the Union are parties to a collective bargaining agreement that expires by its terms on October 31, 2009 (the "Agreement").

The parties agree that upon execution of this Agreement for purposes of determining eligibility for sick pay according to Section 15 of the Agreement, the calendar year shall commence on January 1 for each year of the Agreement.

The parties have agreed that to ease the transition of the change of the commencement date of the calendar year, Section 15(a) shall not apply to until January 1, 2008. Rather, on November 1, 2006, employees who have been continuously employed by the employer for a period of one (1) year shall be entitled to two (2)(sixteen straight time hours) sick days, and on January 1, 2007, employees shall be entitled to seven (7)(fifty-six straight time hours) sick days for that calendar year.

Pursuant to Section 15(a), after January 1, 2008 employees who have been continuously employed by the employer for a period of one (1) year shall be entitled to nine (9) (seventy-two straight time hours) sick days per calendar year.

Except as otherwise set forth herein, Section 15 of the Agreement in its entirety, entitled "Sick Benefit Allowance" shall govern all terms and conditions with respect to the administration of and entitlement to the Sick Benefit Allowance throughout the entire term of the Agreement.

IN WITNESS WHEREOF, the parties hereto have set their hands and seal this 6 day of MARCH , 2006.

**WASTE MANAGEMENT OF ALAMEDA COUNTY**

*R.W. Angell*
Signature

ROBERT W. ANGELL      03-06-06
Print Name                Date

DISTRICT MANAGER
Print Title

**WAREHOUSE UNION LOCAL 6, ILWU**

*Fred Pecker*
Signature

-Fred Pecker      3/6/06
Print Name          Date

Secretary Treasurer
Print Title

22.