# EXHIBIT B

COLLECTIVE BARGAINING AGREEMENT

BY AND BETWEEN

WASTE MANAGEMENT OF ALAMEDA COUNTY AND

RECYCLE AMERICA ALLIANCE, LLC

AND

WAREHOUSE UNION LOCAL NO. 6, ILWU

JANUARY 25, 2005 THROUGH JANUARY 24, 2011

# TABLE OF CONTENTS

|          |                                                        | Page |
|----------|--------------------------------------------------------|------|
| SECTION 1. | RECOGNITION | 1 |
| SECTION 2. | SENIORITY AND JOB BIDDING | 5 |
| SECTION 3. | MANAGEMENT RIGHTS | 6 |
| SECTION 4. | DISCHARGE | 6 |
| SECTION 5. | STEWARD | 7 |
| SECTION 6. | BUSINESS AGENT | 7 |
| SECTION 7. | HOLIDAYS | 7 |
| SECTION 8. | MINIMUM WORK DAYS | 8 |
| SECTION 9. | MEAL PERIODS | 9 |
| SECTION 10. | HANDICAPPED PERSONS | 9 |
| SECTION 11. | NO DISCRIMINATION | 9 |
| SECTION 12. | NO STRIKES–NO LOCKOUTS | 9 |
| SECTION 13. | WAGES | 10 |
| SECTION 14. | WORK DAY, WORKWEEK AND OVERTIME | 11 |
| SECTION 15. | VACATIONS | 12 |
| SECTION 16. | HEALTH AND WELFARE | 14 |
| SECTION 17. | PENSION PLAN | 21 |
| SECTION 18. | SICK BENEFIT ALLOWANCE | 21 |
| SECTION 19. | FUNERAL LEAVE | 23 |
| SECTION 20. | GRIEVANCE COMMITTEE | 23 |
| SECTION 21. | NEW PROCESSES AND NEW MACHINES | 25 |
| SECTION 22. | UNION OFFICIALS' SENIORITY | 25 |
| SECTION 23. | BULLETIN BOARDS | 26 |
| SECTION 24. | MILITARY SERVICES | 26 |
| SECTION 25. | MISCELLANEOUS PROVISIONS | 26 |
| SECTION 26. | LEAVE OF ABSENCE | 27 |
| SECTION 27. | SCOPE OF AGREEMENT AND SEPARABILITY OF PROVISIONS | 28 |
| SECTION 28. | DURATION OF AGREEMENT | 29 |

i

THIS AGREEMENT, made and entered into effective this 25th day of January 2005, is by and between WASTE MANAGEMENT OF ALAMEDA COUNTY, RECYCLE AMERICA ALLIANCE, LLC performing work at 2615 Davis Street, San Leandro, California, hereinafter referred to as the Company, and the WAREHOUSE UNION LOCAL NO. 6, ILWU, hereinafter referred to as the Union. The terms of this Agreement as herein stated are the sole terms of agreement between the respective parties.

## WITNESSETH

SECTION 1.          RECOGNITION

(a)     The Company recognizes the Union as the exclusive representative for the purpose of collective bargaining for all Recycling Sorters/Material Handlers and Recycling Equipment Operators employed at 2615 Davis Street, San Leandro, California.

(b)     All work performed in the sorting, handling and processing of mixed or segregated recyclable materials, as covered by the classifications listed in the Schedule A attached (except Recycling Truck Drivers who unload and sort recyclables and operate a lift truck and other equipment as an integral part of their collation operations), and all employees performing such work, shall be covered by this Agreement.   Work performed in sorting, handling and processing by Drivers of recyclables obtained from curbside collections are not covered by this Agreement.

(c)     Membership in the Union on or after thirty (30) days following the beginning of employment or the effective date of this Agreement, whichever is later, shall be a condition of employment to the extent consistent with the law.

1

(d)    The Company and the Union recognize the desirability of providing continued employment in the industry, and the necessity of having available at all times a supply of competent employees with experience in the various type of work covered by this Agreement. To provide such continued employment, the Company agrees to give the San Francisco Bay Area, by reason of having been employed within the past two years in a classification in this industry, or persons who are presently employed who may become unemployed during the life of this Agreement.

The Company recognizes that it has been the practice for such workers to offer themselves for employment through the Union's offices and consequently, for the purpose of assuring maximum harmonious relations and in order to obtain the best qualified employees covered by this Agreement, the Company agrees that in hiring to fill all vacancies or new positions in any classifications carrying the basic minimum rate, they shall hire through the offices of the Union, provided the Union shall be able to furnish competent and experienced persons for the work required. The Company retains the right to reject any job applicant referred by the Union, provided that neither the Company nor the Union shall discriminate against any applicant because of the person's race, religion, color, national origin, sex, marital status, age or handicap to the extent provided by law, status is a veteran of the Vietnam War Era, union activities, or lack of union activities. In the event the offices of the Union are unable to furnish competent and experienced workers satisfactory to the Company within twenty-four (24) hours, the Company may hire from outside sources. For all other classifications, the Company may apply to the Union for referral of applicants subject to the rules and regulations set forth in this Section, or may hire elsewhere.

The Union shall maintain proper registration facilities for application for employment to make themselves available for job opportunities, and shall conduct such registration facilities without discrimination either in favor of or against prospective employees by reason of membership in or non-membership in the Union. Selection of applicants for referral to jobs shall be on a nondiscriminatory basis and shall not be based on, or in any way affected by, Union membership, bylaws, rules, regulations, constitutional provisions, or requirements. From such registration facilities the Union shall first dispatch to the Company upon its request any unemployed person who has worked previously for an employer in this industry in the San Francisco Bay Area, or for an employer in some other area in the same industry whom the Company may consider particularly suitable for the job., If no such person is specified by the Company in requesting referrals from the Union, then the Union shall dispatch persons for referral in accordance with the preference requirements set forth above.

The Union agrees that any employee secured through its offices or otherwise employed in accordance with the terms of this Section and who is acceptable to the Company shall not be withdrawn from his job because, he is not a book member of the Union, or for the purpose of replacing him by someone else, and that no employee shat be threatened, intimidated, of otherwise encouraged to terminate his employment.

Subject to the above the Union undertakes to fill all orders for the same classification of work in order of their receipt, and agrees that neither the Union offices nor the procedure therein shall be used or devised to discriminate against, intimidate, or coerce the Company. Company representatives may visit such Union offices at any time to observe and examine their operation, and complaints concerning the operation of such Union offices and

concerning violations of the above undertaking shall be adjudicated in accordance with Section 19, Grievance Committee.

The parties to this Agreement shall post in places where notices to employees and applicants for employment are customarily posted a copy of this Section, and any and all other provisions relating to the functioning of the hiring arrangement provided in this Agreement.

(e)    The Company and the Union agree to use the following language for payroll deduction of Union dues:

> I, the undersigned employee of Waste Management of Alameda County, hereby authorize and direct the said Company to deduct on my first payday of each month from my wages now or hereafter due me, and pay to Warehouse Union Local 6, ILWU, my membership dues and initiation as a member of that organization. I agree to hold the Company harmless from loss from any judgment of a court of competent jurisdiction and from any order of the Labor Commissioner or other agency of government in connection with or arising from any deductions made pursuant to this assignment. No other assignment or order exists in connection with this transaction. This assignment shall be irrevocable for a period of one year from the date hereof and shall remain in full force and effect thereafter until revoked in writing by the undersigned.

Date: _____       _____
                              Employee's Signature


                              _____
                              Steward's Signature

(f)    Should the Company utilize an application and orientation process, the Company will contact the Union at least 24 hours before the day of employment for the Hiring Hall referrals. The Company commits to pay 4 hours' compensation to such individuals who

actually report for their first day of employment. Applicants seeking employment through the Employer shall be referred to the Hiring Hall.

SECTION 2.          SENIORITY AND JOB BIDDING

(a)     In reduction of forces due to slackness of work, the last employee hired shall be the first employee laid off and in rehiring, the last employee laid off shall be the first employee rehired, until the list of former employees is exhausted, provided the senior employees to be retained or recalled are capable and have demonstrated the ability to perform, the available work. Seniority shall not apply to any employee until he has been employed for sixty-five (65) days (520 straight-time hours worked) accumulated within a period of twelve (12) consecutive months.

(b)     Seniority shall be terminated by:

(i)     Discharge for cause.

(ii)     Resignation.

(iii)     Twenty-four (24) consecutive months of unemployment.

(c)     Whenever a permanent vacancy occurs, a bid notice shall be posted for a period of three (3) working days. At the conclusion of the posting period, the Company shall award the position by seniority, provided that the employee to be selected must be capable and must have demonstrated the ability to perform the work. Any employee awarded a job bid under this Section shall not be permitted to bid again for eight (8) months.

5

SECTION 3.    MANAGEMENT RIGHTS

The Union recognizes the Company's inherent and traditional right to manage its business, to establish reasonable work rules and to require their observance. The Company shall have the right to direct the working force in the performance of their work assignments, including the assignment of jobs and equipment, promotions and demotions, as well as to regulate the general working conditions and the efficiency of operations. The right of the Company in the operations of its business is unlimited except as it may be expressly and specifically restricted by the provisions of this Agreement, and this Agreement is the sole agreement between the parties.

SECTION 4.    DISCHARGE

(a)    The Company shall have the right to discharge any employee for absenteeism, dishonesty, insubordination, illicit substance abuse, incompetence, willful negligence, or failure to observe Company safety and house rules and regulations which must be conspicuously posted.

(b)    If an employee feels he has been unjustly discharged, he shall have the right to appeal his case to the Grievance Committee. Such appeal must be filed in writing by the Union within five (5) working days from the date of discharge or suspension. In case the discharge is found to be unjustifiable by the Grievance Committee, the Grievance Committee may order payment for lost time or reinstatement with or without payment for lost time.

(c)    Any discharged employee shall, upon request, be furnished the reason for his discharge in writing.

6

(d)    All complaints regarding discharges shall be given preference over any other matter pending between the parties, and a written decision shall be given within ten (10) days.

(e)    Warning letters that are more than twelve (12) months old will not be taken into consideration for future disciplinary purpose.

SECTION 5.    STEWARD

Two (2) Union Stewards shall be permitted, such Stewards to be selected by employees on the job. The duty of the Steward shall be to report to the Union any grievance which may arise and which cannot be adjusted on the job. It is understood and agreed that the Steward shall have no power to order any changes.

SECTION 6.    BUSINESS AGENT

The Business Agent or qualified representative of the Union shall be allowed to talk with the employees on the job for the purpose of ascertaining whether this Agreement is being observed by the parties hereto, or to assist in adjusting grievances. This privilege shall be exercised so that no time is lost to the Company unnecessarily.

SECTION 7.    HOLIDAYS

(a)    There shall be seven (7) paid holidays New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day and one Floating Holiday, for which new employees become eligible after one (1) year of employment. For each paid holiday, employees shall be paid eight (8) hours at the straight-time rate when not worked.

(b)    To be eligible for paid holidays, the employee must have been on the payroll a minimum of three (3) months and must work the scheduled work day immediately

7

preceding the holiday and the first scheduled work day immediately following the holiday, and shall receive no pay for the holiday if he fails to report for work when scheduled to do so. Employees otherwise entitled to holiday pay but who are absent due to layoff on either the last, regular working day immediately preceding the holiday or on the first regular working day following the holiday shall receive holiday pay provided such employees have worked one or more days during the seven (7) calendar days immediately preceding the holiday or worked one or more days during the seven (7) calendar days immediately following said holiday.

(c)    If any named holiday in this Agreement falls on a Saturday, it shall at the option of the Company on each such occasion be celebrated on such Saturday or on the Friday immediately preceding. If Friday is selected, all the provisions of this Section shall apply to such Friday, and if Saturday is selected, all the provisions of this Section shall apply to such Saturday, including eight (8) hours' straight time pay to qualified employees not required to work on such Saturday.

(d)    Any work performed on the named holidays in this Agreement shall be paid for at the rate of one and one-half (1-1/2) times the straight or overtime rate, as the case may be provided that an employee who is entitled to pay for any such holiday if not worked shall receive such holiday pay in addition to the overtime rate to which he is entitled for working.

SECTION 8.        MINIMUM WORK DAYS

(a)    Employees who report to work at their scheduled starting time shall be guaranteed six (6) hours work or pay, unless work is unavailable due to acts of God, machine breakdown, fire, flood, explosion or power failure.

(b)    Casual employees shall be guaranteed the lesser of four (4) hours' pay or the remainder of the regular work day from the time they report.

SECTION 9.        MEAL PERIODS

If employees are worked over five (5) consecutive hours without a meal, all time in excess of five (5) hours shall be paid at one and one-half (1-1/2) times the straight or overtime rate, as the case may be.

SECTION 10.        HANDICAPPED PERSONS

A person whose earning capacity is or shall become limited because of age, physical or mental handicap, or other infirmity, may be employed or placed on light work at a wage below the minimum established by this Agreement, subject to the approval, is each instance of the Company and the Union.

SECTION 11.        NO DISCRIMINATION

There shall be no discrimination of any kind because of race, religion, color, national origin, sex, marital status, status as a veteran of the Vietnam War era, or Union activities against any member of the Union by the Company or any one employed by the Company in accordance with applicable Federal and State laws, and to the extent prohibited by applicable State and Federal law there shall be no discrimination because of age or handicap.

SECTION 12.        NO STRIKES–NO LOCKOUTS

(a)    The Union agrees that it will not support strikes or picket lines by unions not parties to this Agreement unless such union's right to organize peacefully has been interfered with by the Employer or unless it has been denied the means of a peaceful settlement of its dispute.

9

The Union and its representatives agree that they will enforce full compliance with all terms and provisions of the Agreement on the part of members of the Union.

The Union, its members and representatives agree that it and they will not engage in, authorize, sanction or support any strike, slowdown, stoppage of work, curtailment of production, concerted refusal of overtime work, refusal to operate designated equipment (provided such equipment is safe and sound) or to perform customary duties, or to reject promotions without justifiable personal reasons.

Neither the Union nor any representative thereof shall engage in job action for the purpse of effecting changes in the existing practices, nor to effect a change of personnel or operations of management or of employees not covered by this Agreement.

(b)    Any action of the employees; leaving jobs for their own protection in cases of a legally declared strike by some other union directly working on the job, if such strike is sanctioned and approved by the Labor Body, or Council having jurisdiction, shall not constitute a violation of this Agreement.

SECTION 13.              WAGES

(a)    Wages shall be paid in accordance with the schedules attached hereto.

(b)    If an employee is required to work on a higher rated job for one (1) hour or more (aggregated during the employee's shift), he shall receive that job rate for all work performed on the higher rate job.

SECTION 14.                    WORK DAY, WORKWEEK AND OVERTIME

       (a)    Work performed in excess of eight (8) consecutive work hours in one day or in excess of forty (40) work hours in one (1) week shall constitute overtime. The day shift shall start between 4:00 a.m. and 9:59 a.m. for all employees and all other operations required to be performed prior to the employee's scheduled starting time and after his scheduled quitting time shall be paid at the overtime rate. There shall be no pyramiding or accumulating of overtime pay.

       (b)    The overtime rate shall be one and one-half (1-1/2) times the straight time rate for all hours worked over eight (8) consecutive hours daily and for all hours worked on the sixth (6th) day of work. Double time shall be paid for all work required to be performed on the seventh (7th) day of work. For purposes of computing overtime, each holiday shall be considered as a day worked.

       (c)    If an employee is absent with just cause, such day or days of absence, if paid, shall be counted as days worked for the purpose of determining his rate of pay on a sixth (6th) or seventh (7th) day during the workweek.

       (d)    Daily overtime shall be assigned to the employees who are scheduled to perform the work at the affected location (i.e., MRF, green waste, etc.). If the daily overtime assignment cannot be filled, available daily overtime will be offered by seniority within the classification. Weekend overtime will be assigned by seniority to employees who are qualified to do the work and as described in the parties' letter of understanding attached.

11

## SECTION 15.    VACATIONS

(a)    Every employee who on the most recent anniversary date of his employment shall have been in the service of the Company for a period of one (1) year or more and shall have worked a minimum of 1,000 straight-time hours within the twelve (12) month period immediately preceding such anniversary date, shall be entitled to a vacation as follows:

Two (2) weeks of vacation with pay if he shall have been in the service of the Company for a period of one (1) year or more but less than five (5) years prior to such anniversary date.

Three (3) weeks of vacation with pay if he shall have been in the service of the Company for a period of five (5) years or more but less than fifteen (15) years prior to such anniversary date; provided, however, that the Company may require that no more than two (2) weeks of such three (3) week vacation be taken at any one time.

Four (4) weeks' vacation with pay if he shall have been in the service of the Company for a period of fifteen (15) years or more prior to such anniversary date; provided however, that the Company may require that no more than two (2) weeks of such four (4) week vacation be taken at any one time.

(b)    For the purposes of this Section, years of service shall mean years of unbroken seniority with the Company which shall in no event be calculated from a date prior to the time the employee actually commenced working for the Company.

(c)    In computing straight-time hours as that term is used in this Section and in relation to life insurance, all hours worked by the employee for the Company shall be counted,

but each premium or overtime hour worked shall count only one (1) straight-time hour.  Paid holidays shall be counted toward satisfying the foregoing 1,000 straight-time hour eligibility requirement.  Time lost not to exceed 300 hours as a result of an accident as recognized by the Workers' Compensation Bond suffered during the course of employment shall be considered as time worked under the provisions of this Agreement.  Paid vacation hours in the previous anniversary year shall count as qualifying hours in determining an employee's entitlement to vacation and sick leave.

(d)     For employees who have been in the service of the Company for more than one (1) year and who fail to qualify for a full vacation, vacation benefits shall be prorated in accordance with the following schedule.  There is to be no proration of vacation benefits for hours worked during the first three (3) months of employment.  An employee who is terminated or laid off with more than three (3) months and less than one (1) year's service shall be entitled to vacation pay computed from date of hire and prorated to one (1) year's service.  With more than one (1) year's service, he shall receive prorated vacation pay computed from his last anniversary date of employment, based on years of service and prorated to length of service without reference to qualifying hours.  Proration shall be based on 1/12 of vacation eligibility for each month of 150 hours of service.

Time off for vacation pursuant to the foregoing proration provision shall be allowed only in full-week units.  If the application of this provision results in an employee being credited with less then five (5) full days' vacation, the amount of the employee's vacation credit shall be paid in cash but the employee shall not be entitled to vacation time off.  Similarly, if the application of this provision results in an employee being credited with more than five (5) but less than ten (10), or more than ten (10) but less than fifteen (15) day's of vacation the employee

13

will be scheduled for a five (5) or to (10) day vacation as the case may be and will be paid the excess allowance in cash.

Employees qualifying for pro-rata vacation whose seniority and employment is terminated for any reason shall receive in cash the pro-rata vacation for which they are eligible at the time of termination.

(e)    For the purposes of this Section, one week's pay shall mean straight-time pay for the regularly scheduled workweek at the time the vacation is taken, but in no event more than forty eight (48) times the straight-time hourly rate of pay, nor less than twenty (20) times the straight-time hourly rate of pay.

(f)    Preference of vacation date shall be given to employees according to their seniority rating as reasonably possible.  Employees shall be given, insofar as practical, two (2) weeks' notice of the date upon which their vacation period will commence.

(g)    The vacation must be taken with the current year, that is, it may not be accumulated to be used later in the following year.

(h)    Vacation pay shall be given to employees at the commencement of their vacation, upon two (2) days' prior request.

SECTION 16.            HEALTH AND WELFARE

(a)    Life Insurance.  The Company shall make monthly contributions to the ILWU Warehouseman's Welfare Fund for each eligible employee as required to provide a $15,000 term life insurance policy with a non-occupational accidental death and dismemberment rider.  Eligibility will be determined as in (d) below.

14

(b)    Once an employee has become eligible for life insurance coverage, his life insurance shall remain in effect so long as he is covered by the same employer for hospital-medical-dental care pursuant to the terms of this contract, but the Employer shall otherwise be under no obligation to furnish such insurance for the employee after his employment is terminated or while the employee is laid off or is on leave of absence.

(c)    In addition to life insurance coverage in (a) above, the individual shall have the right to continue his life insurance for the term of his seniority if he pays the premium himself.

(d)    (1)    <u>Eligibility for Regular Coverage.</u>  Any employee who completes eighty (80) straight-time hours of paid-for employment in any calendar month shall for the following calendar month be eligible for and covered by a hospital-medical program, dental program, prescription drug plan, and by a vision care plan; provided, however, that if with respect to the hospital-medical program the employee has selected Plan B, then in any instance in which the employee is absent from active work because the employee is hospital-confined when the employee's insurance would otherwise take effect, the effective date of the employee's insurance shall be deferred until the employee returns to active work; provided further that as to any employee who has selected Plan B, the employee's dependents who are hospitalized on the day they would become covered will not be covered until released from hospital care.

Eligibility for regular coverage shall be terminated by:

(A)    Failure to complete eighty (80) straight-time hours of paid-for employment in any calendar month;

(B)   Discharge; or

(C)   Voluntary resignation;

and coverage is terminated on the last day of the month in which such eligibility for regular coverage ceases.

In calculating eligibility for regular coverage, paid vacation, paid holiday, paid sick leave and paid funeral leave shall count as time worked.

Any employee whose eligibility for regular coverage ceases because of layoff, and who at the time of such layoff has two (2) or more years of seniority with the Company, shall at the expense of the Fund and without any contribution from the Company be granted four (4) additional months of hospital-medical, dental care, prescription drug and vision care coverages under the plans which are in effect as to the employee at the time of layoff.

Any employee having seniority pursuant to Section 7 of this Agreement and who by reason of disability is unable to work, shall remain eligible for regular coverage and the employee's coverage shall continue at the expense of the Company for the term of the employee's disability, not to exceed a maximum of twelve (12) months from the occurrence of the disability.  The Company shall have the right to require a doctor's certificate or other reasonable proof of disability.

Effective January 25, 2005, the Company shall pay the monthly rate for eligible employees provided by the prevailing Master Agreement between the Industrial Employers and Distributors Association (IE&DA) and the Union.

1)    Effective upon ratification, covered employees shall pay five dollars ($5.00) per month toward the applicable health insurance premium under this section. Said amount shall be deducted pro-rata from an employee's check on a weekly basis.

2)    Effective January 25, 2006, covered employees shall pay ten dollars ($10.00) per month toward the applicable health insurance premium under this section. Said amount shall be deducted pro-rata from an employee's check on a weekly basis.

3)    Effective January 25, 2007, covered employees shall pay fifteen dollars ($15.00) per month toward the applicable health insurance premium under this section. Said amount shall be deducted pro-rata from an employee's check on a weekly basis.

4)    Effective January 25, 2008, covered employees shall pay twenty dollars ($20.00) per month toward the applicable health insurance premium under this section. Said amount shall be deducted pro-rata from an employee's check on a weekly basis.

5)    Effective January 25, 2009, covered employees shall pay twenty-five dollars ($25.00) per month toward the applicable health insurance premium under this section. Said amount shall be deducted pro-rata from an employee's check on a weekly basis.

6)    Effective January 25, 2010, covered employees shall pay twenty-five dollars ($25.00) per month toward the applicable health insurance premium under this section. Said amount shall be deducted pro-rata from an employee's check on a weekly basis.

The above employee contributions shall be deducted on a pre-tax basis from the employee's earnings pursuant to the Company's IRS Section 125 plan. The Company shall pay an administrative fee as established by the Trustees of the ILWU Warehouseman's Welfare Fund

in addition to the amount stipulated to be paid for each eligible employee as stated in the preceding paragraph.

There shall be a choice between two (2) hospital-medical plans. One plan (Plan A) shall be such as the Kaiser Foundation Health Plan or as may be selected by the Union, and the other (Plan B) shall be a free choice plan under which the employee will be able to select their own physician or surgeon and their own hospital. In those geographical areas when Plan A is not available, such employees are entitled only to Plan B. The carrier of Plan B, the carrier of the dental plan and the carrier(s) of the prescription drug plan(s) and vision care plan(s) shall be jointly selected by the Fund and the Union.

Each employee who is eligible for regular coverage may make an election as to whether to change coverage to Plan A or Plan B on August 15 of each year, any change to be effective September 1 of the same year. Employees who become eligible for regular coverage after the effective date of this agreement shall make their choice upon becoming eligible and may have a like choice on August 15 of each subsequent year.

Duplicate coverage will be avoided on both Plan A and Plan B, and the Company may make suitable arrangements with the carriers on both Plan A and Plan B for the avoidance of such duplicate coverage.

(2)    Employees who are not eligible for regular coverage shall for the purposes of this Section be called "casual employees." The Company will pay a stipulated sum for each straight-time hour worked, by such casual employees (and for each straight-time hour worked by employees who are working as casuals while on extended coverage), such sum per hour to be

computed to the nearest one-fourth (1/4) cent by dividing by 173.3 the monthly contribution required for regular coverage. Such hourly sum shall be collected by the Fund each month.

These funds will first be used for the purpose of providing extended coverage under the provisions of this Section. Any balance remaining will constitute Fund reserves, the application of which will, from time to time, be determined by the Trustees.

The sums so collected by the Fund may be combined with like sums collected from non-Fund employers if necessary to effect any application which is agreed upon, provided that monies paid by such other employers with respect to such casuals shall be at rates not less than the same rate as is paid by the Fund members for each hour worked.

The Company may if the Company wishes, place a casual employee under regular monthly coverage upon commencement of employment or prior to the employee's eligibility date for regular coverage, in which event the required hourly contribution for such casual employee shall cease upon the date on which such regular coverage is made effective for the employee.

An employee eligible for regular coverage who by virtue of having two (2) or more years' seniority with the Company at the time of the employee's layoff receives extended coverage from the Trust Fund, shall not be eligible for more than four (4) months of such extended coverage in any twelve (12) month period irrespective of the number, frequency, or length of the employee's layoff periods. If the cost to the Fund of extended coverage for laid off employees, as herein provided, becomes excessive in the opinion of either the Union or the Fund, the provisions for extended coverage shall be subject to renegotiation at the request of either party.

19

(3)    Hospital-Medical-Dental Plan Delinquencies.  If the trustees of the Fund through which the hospital-medical-dental, prescription drug, vision care benefits and life insurance benefits are to be administered for employees covered by this Agreement determine that the Company subscriber to any such Fund is in default (i.e., delinquent) for forty-five (45) or more days in the payment of any amount or amounts due said Fund from said Company, the Trustees may notify such Company by certified or registered mail, return receipt requested, of such delinquency and shall at the same time send a copy of said notice to the Union.  Such notice shall specify the amount of the delinquency together with any other amounts which have been assessed and remain unpaid.

If after the expiration of fifteen (15) days from the mailing of such notice to the Company, the full unpaid amount specified in said notice has not been paid in full to the Fund, the Union may give five (5) days' written notice by certified or registered mail, return receipt requested (excluding Saturdays, Sundays and holidays) to the delinquent Company of such delinquency in payments; and if at the conclusion of said five (5) days the amount of such delinquency has not been paid in full to the fund, then, and notwithstanding anything otherwise contained in this Agreement, the Union shall have the right to take such legal or economic action as it may determine against the Company to collect such delinquent amount.  Furthermore, the delinquent Company shall be liable to their employees for any and all benefits under the hospital-medical prescription drug plan, vision care plan, and life insurance plan to which the employee would have been entitled if the Company had not been delinquent in the payment of such contributions.  As an additional remedy, the employee shall have the right in addition to all other rights above set forth, to bring legal action against such delinquent Company to obtain

payment of such benefits. In any legal action, such Company shall bear all court costs together with reasonable attorney's fees in such amount as the court in such action may determine.

If the Union elects to strike such Company in accordance with this provision the right to strike shall terminate as soon as the Company has paid said delinquency.

SECTION 17.          PENSION PLAN

Employees who have completed their ninety (90) day probationary period shall be eligible to participate in the "Waste Management Pension Plan for Collective Bargaining Unit Employees" under the terms of said Plan.

SECTION 18.          SICK BENEFIT ALLOWANCE

(a)     Every employee covered by this Agreement who has been continuously employed by the Company for a period of at least one (1) year shall thereafter be entitled to five (5) days (forty (40) straight-time hours) sick leave with pay per contract year. A doctor's certificate or other reasonable proof of illness may be required by the Company if the employee's illness results in absence from work for more than three (3) consecutive days, or in cases of repetitive absences. Such sick leave with pay shall be applicable only in cases of *bona fide* illness or accident. Sick leave pay shall commence with the first day. Sick leave for the period between an employee's first anniversary date and the commencement of the following contract year (June 1) shall be pro-rated.

(b)     For the purposes of this paragraph, full pay shall mean pay for the regular daily schedule of working hours for those days the employee would have worked had the disability not occurred, calculated at straight-time or one-half such amount.

21

(c)   If an employee is absent the day before or the day after a holiday due to *bona fide* illness or accident, said holiday shall be considered a work day's absence.

(d)   Unused sick leave may be accumulated from year to year to a maximum of twenty-five (25) days which, together with the employee's current year's allowance, may result in a maximum sick benefit allowance of thirty (30) days (240 hours).

(e)   Job Injuries.  Whenever an employee who has been injured on the job and has returned to work is requested by the Company's compensation doctor to leave work to report for treatment during working hours, he shall be allowed time off up to two (2) hours for such treatment without loss of pay.

(f)   In industrial injury or disability cases, Workers' Compensation or Unemployment Disability (UCD) benefits and sick benefit allowances shall be paid separately, but in the event Workers' Compensation payments or Unemployment Disability payments cover all or part of the period during which sick benefit allowances are paid, the sum of the two shall not exceed the sick benefit payable for said period, and the unused portion of accumulated sick leave will continue to be credited to the employee.  Integration of sick leave benefits with Workers' Compensation or Unemployment Disability payments is to be automatic; the Company may not waive integration, and any employee entitled to Workers' Compensation or Unemployment disability payments must apply therefore (in order that the principle of integration may be applied) before sick benefits are payable.

(g)   In the event that an employee has not used all of his accrued sick leave at the time of retirement or death, the employee shall be entitled to a day's pay for each of the employee's unused sick leave days at the employee's classification rate of pay for eight (8)

hours. For the purpose of this provision, retirement is defined as the voluntary resignation of an employee over the age of sixty-five (65) with over twenty (20) continuous years of employment with the Company.

## SECTION 19.    FUNERAL LEAVE

In the event of a death in the immediate family of an employee who has one or more years of seniority with the Company, he shall, upon request, be granted such time off with pay as is necessary to make arrangements for the funeral and attend same, not to exceed three (3) regularly scheduled working days. This provision does not apply if the death occurs during the employee's paid vacation, or while the employee is on leave of absence, layoff or sick leave, and does not apply to death resulting from earthquake or war.

For the purposes of this provision, the immediate family shall be restricted to father, mother brother, sister, spouse, child, grandparents, grandchildren, mother-in-law and father-in-law. At the request of the Company, the employee shall furnish a death certificate and proof of relationship.

Funeral leave applies only in instances in which the employee attends the funeral, or is required to make funeral arrangements, but is not applicable for other purposes such as settling the estate of the deceased.

## SECTION 20.    GRIEVANCE COMMITTEE

(a)    There shall be an informal first step of the grievance procedure with discussions between the aggrieved employees, the Shop Steward if requested by the employee, and the supervisor. If the grievance is not resolved during this first step, the grievance shall be reduced to writing. In order to be considered timely and eligible for consideration or processing,

the written grievance must be submitted by the employee to his Supervisor within twenty (20) days of the occurrence of the facts giving rise to the grievance. All complaints involving or concerning payment or compensation shall be filed in writing and no adjustments shall be retroactive for more than ninety (90) days in such cases, but only complaints involving or concerning payment or compensation under the terms of this Agreement and written agreements and supplementary agreements may be considered by the Grievance Committee.

      (b)    A Committee shall be appointed by the Company to consist of not more than two (2) representatives designated by the Company and not more than two (2) employees of the Company designated by the Union. This committee shall take up all grievances or disputes concerning the interpretation or application of this Agreement. In the event the Committee is unable to agree on any matters submitted to it, the question or questions in dispute may, subject to the following requirements, be submitted to an Arbitrator selected by mutual agreement of the Parties. If the Parties cannot agree on an Arbitrator, the Federal Mediation and Conciliation Service shall be requested to supply a panel of seven (7) Arbitrators who are registered with the National Academy of Arbitrators. From this panel, the Party requesting arbitration shall strike three (3) names and so notify the other Party. The other Party shall then strike three (3) names, and the name remaining shall be the Arbitrator who hears the case. Each Party to any case submitted to arbitration shall bear the expense of preparing and presenting its own case, including witnesses, and shall pay one-half (1/2) of the charges of the Arbitrator. The Arbitrator shall not have the authority to change, add to, delete, alter or modify any of the terms or provisions of this Agreement. The decision of the Arbitrator shall be final and binding upon both Parties to this Agreement and bargaining unit employees.

(c)    The Company and the Union shall in good faith use their best efforts to expedite the handling and processing of all grievances through the procedure in order to achieve a speedy resolution of all grievances. No grievance mall be eligible for processing to arbitration and shall be deemed null and void unless:

(1)    The Party requesting Arbitration has served a formal written Request for Arbitration on the other Party within thirty (30) days front the date the Grievance Committee met (and failed to resolve the grievance), and

(2)    The Party requesting arbitration has in good faith worked toward the timely selection of an Arbitrator and the scheduling of an arbitration hearing.

SECTION 21.    NEW PROCESSES AND NEW MACHINES

The Company shall notify the Union in advance of any permanent layoff of seniority employees which is going to result from the installation of new machinery or new processes in order that the impact of such layoff upon the employees may be discussed.

SECTION 22.    UNION OFFICIALS' SENIORITY

Any employee who now holds office or who shall hereafter be elected or officially appointed to office in the union, which office requires his absence from the service of the Company, shall be granted a leave of absence thereof without loss of seniority entitling him upon retirement from such office to reinstatement consistent with this seniority; provided, however, that such leave of absence shall not extend beyond the term of this Agreement, unless extended by mutual consent.

25

## SECTION 23.     BULLETIN BOARDS

The Company shall provide a reasonable number of bulletin boards in places reasonably accessible to the employees covered by this Agreement for the purpose of posting notices of official Union business, such as, times and places of meetings.

## SECTION 24.     MILITARY SERVICES

Any employee covered by this Agreement who has seniority who during the period of this Agreement is inducted into the land, air or naval forces of the United States of America, whether voluntarily or by government order, shall retain his seniority, rights and consistent with his seniority and his physical and mental abilities, his right to his former position, or the equivalent, for the period of this Agreement or subsequent agreements, provided application for reemployment is made within sixty (60) days after his release from the said military service, and provided further that such employee has not extended his period of service by his own choice.

## SECTION 25.     MISCELLANEOUS PROVISIONS

(a)     Each employee shall receive a ten (10) minute rest period halfway between each four (4) hour work period. An employee scheduled to work ten (10) or more hours in a day will receive a third (3rd) ten (10) minute rest period, with all meal and rest periods spaced at approximate two (2) hour intervals during the day.

(b)     Any employee who has one (1) or more years' seniority with the Company and has qualified for his initial vacation, if called and reporting for jury duty, will be entitled to the difference between jury duty pay and his regular daily rate of pay for each day of jury service up to the maximum of seven (7) working days during any twelve(12) consecutive months.

(c)    The Employer will furnish each employee with two pairs of gloves, every three (3) months.

(d)    In the event that the Employer requires employees to wear a safety boot meeting Employer's specifications, seniority employees will be reimbursed up to $125 per year for the cost of such boots.

(e)    The Oakland Living Wage Ordinance shall be inapplicable to the provisions of this Agreement, provided that the total cost of wages and benefits contained herein exceeds the total cost of the wage and benefit requirements in the Ordinance.

(f)    The Company commits to support and participate in the FMCS Labor Relations Training Program for designated Company and Union Representatives.

(g)    The Employer will furnish each employee with two (2) aprons every three months.

SECTION 26.    LEAVE OF ABSENCE

(a)    Any employee desiring a leave of absence from his employment shall secure written permission from the Company who shall send a copy to the Union by certified mail within ten (10) days of the commencement of the leave. The decision of the Company on granting or refusing to grant a leave of absence or extension thereof shall be final and conclusive and shall not be subject to the grievance procedure of this Agreement. Except as otherwise provided in this. Section, the maximum leave of absence shall be for thirty (30) days and may be extended for like period.

27

(b)    Written permission for such extended periods shall be secured from the Company with a copy of the extension to the Union. The first approved leave of absence plus approved extended leaves of absence shall not exceed a maximum time period of six (6) months. During an approved leave of absence the employee shall not engage in gainful employment unless authorized to do so by the written permission. The Company may terminate any employee who violates the terms and conditions of the written permission for leave or extension thereof.

SECTION 27.    SCOPE OF AGREEMENT AND SEPARABILITY OF PROVISIONS

(a)    Scope of Agreement.    Except as, otherwise specifically provided herein, this Agreement and the parties' July 12, 2005, No Strike/No Lockout Letter of Understanding, fully and completely incorporates the understanding of the parties hereto and constitutes the sole and entire agreement between the Parties on any and all matters subject to collective bargaining. Neither party shall, during the terms of this Agreement, demand any change therein, nor shall either party be required to bargain with respect to any matter. Without limiting the generality of the above, both parties in their own behalf waive any right to demand of the other any negotiating, bargaining, or change during the life of this Agreement with respect to Pensions, Retirement, Health and Welfare, Annuity or Insurance Plans, or respecting any questions of wages, hours, or any other terms or conditions of employment; provided that nothing herein shall prohibit the parties from changing the terms of this Agreement by mutual agreement.

(b)    Separability of Provisions.    Should any section, clause or provision of this Agreement be declared illegal by final judgment of a court of competent jurisdiction, such invalidation of such section, clause or provision shall not invalidate the remaining portion hereof,

28

and such remaining portions shall remain in full force and effect for the duration of this Agreement.

Upon such invalidation, the parties agree immediately to meet and negotiate substitute provisions for such parts or provisions rendered or declared illegal or an unfair labor practice. In the event the parties are unable to agree upon substitute provisions, the dispute may at the request of either the Company or the Union be referred to arbitration for settlement pursuant to the provisions of Section 19 hereof, but the power of the arbitrator shall be restricted and limited to determining a substitute provision to provide the same specific objective and purpose of the provision rendered or declared illegal.

(c)    <u>Unlawful Action Not Required</u>. The parties agree that neither will willfully require the other to do or perform any act prohibited by law.

SECTION 28.    DURATION OF AGREEMENT

This Agreement shall be effective January 25, 2005, except for those provisions of the Agreement which have been assigned other effective dates as herein above set forth and shall remain in full force and effect to and including January 24, 2011, and shall continue thereafter from year to year unless at least sixty (60) days prior to January 24, 2011, or to the 24th day of January of any subsequent year either party shall file written notice with the other of its desire to amend, modify or terminate this Agreement.

29

WAREHOUSE UNION,
LOCAL 6, ILWU

WASTE MANAGEMENT OF
ALAMEDA COUNTY, INC.

By: _____

By: _____

Date: _____

Date: _____

RECYCLE AMERICA ALLIANCE, LLC

By: _____

Date: _____

Firmwide:80312425.1 046609.1218

30

SCHEDULE "A"

The following wage rates shall be effective for the classifications below on January 25, or the first working day after January 25, of each year specified below.

| CLASSIFICATION | WAGE RATES | | | | | |
|---|---|---|---|---|---|---|
| | 05 | 06 | 07 | 08 | 09 | 10 |
| Recycling Sorter/Material Handler | $9.50 | $10.50 | $11.00 | $11.50 | $12.00 | $12.50 |
| Red-Circled* | $11.35 | $11.45 | $11.65 | $11.85 | $12.00 | $12.50 |
| Recycling Equipment Operator | $13.60 | $14.01 | $14.43 | $14.86 | $15.31 | $15.81 |

Employees promoted into the Recycling Equipment Operator classification shall be paid $1.00 less than the contract rate for the first six (6) months and $.50 for the second six (6) months and paid the contract rate after twelve (12) months.

The Company may implement, modify or discontinue a Productivity and Commodity Bonus Program which would be paid in addition to the contractual hourly wage rates.

**Shift Differential** — Seventeen cents ($.17) and twenty-two-cents ($.22) per hour shall be paid to employees assigned to work the Swing Shift or Night Shift, respectively. For purposes of this Section, the Swing Shift includes any shift beginning between 10:00 a.m. and 7:59 p.m.; and the Night Shift includes any shift beginning between 8:00 p.m. and 3:59 a.m.

---

* See Attached Letter of Understanding for a list of red-circled employees.

<u>Lead Person</u> – The Company may establish or discontinue Lead Person positions within a classification in the following manner. The Company will post an opening for a Lead Person position if in the judgment of the Company business needs require such a position. The position will be awarded by the Company based on its judgment as to the employee's qualifications including seniority, safety record, communication skills, and documented performance with seniority being the deciding factor where qualifications are equal. The Lead Person shall receive one dollar and twenty-five cents ($1.25) per hour above the base rate for performing the Lead Person duties.

<u>Buyback</u> — The Company may establish or discontinue buyback positions. The Company will post an opening for a buyback position if in the judgment of the Company business needs require such a position. The position will be awarded by the Company based on its judgment as to the employee's qualifications including seniority, safety record, communication skills, and documented performance with seniority being the deciding factor where qualifications are equal.

The buyback position shall receive fifty cents ($.50) per hour above the base rate for performing the buyback duties.

<u>Foreperson</u> — The Company may establish or discontinue Foreperson positions. The Company will post an opening for a Foreperson position if in the judgment of the Company business needs require such a position. The Company will consider seniority, qualifications, and skill in filling the positions, but the final decision on filling the position shall be at the Company's discretion.

The Foreperson position shall receive two-dollars ($2.00) per hour above the base rate for performing the Foreperson duties.

32

## LETTER OF UNDERSTANDING

### SORTER WAGE RATES

The below list of employees shall receive the "high-tier" wage rate so long as they remain employed in the Recycling Sorter/Material Handler classification.

| NAME | SENIORITY DATE |
|---|---|
| Alexander, James | 5/17/95 |
| Avila, Jesus | 9/18/90 |
| Carrasco, Andres | 10/5/92 |
| Ceballos, Arcadio | 3/13/95 |
| Christy, Manuel | 9/17/90 |
| Cruz-Contreras, Juan | 7/8/94 |
| Duran, Rodolfo | 4/4/94 |
| Hidalgo, Zaira | 8/18/94 |
| Jauregui, Mirella | 10/8/96 |
| Montano, Elvira | 9/11/96 |
| Nunez, Juan L. | 7/12/94 |
| Pedroza, Maria | 9/11/94 |
| Pena, Francisca | 1/10/94 |
| Sanchez, Maria | 1/14/94 |
| Solano-Zepeda, Jose | 1/4/91 |
| Vergil, Roberto | 9/15/94 |
| Zuniga, Alfonso | 8/11/92 |

WAREHOUSE UNION, LOCAL 6, ILWU

WASTE MANAGEMENT OF ALAMEDA COUNTY, INC.

By: _____

By: _____

Date: _____

Date: _____

RECYCLE AMERICA ALLIANCE, LLC

By: _____

Date: _____

33

**Release of Liability, Agreement Not to Assert Claim**

It is recognized that a dispute exists between Waste Management of Alameda County (Recycle America of Northern California and Davis Street Recycling Center) and Warehouse Union Local No 6, ILWU, regarding Health and Welfare Section (d)(4) pertaining to the Pensioners Hospital and Medical Trust, as contained in prior recycling collective bargaining agreements. Health and Welfare Section (d)(4) of prior agreements ostensibly required WMAC to make contributions of forty-seven dollars and sixty-six cents ($47.66) to the Distributors Association Pensioners Hospital and Medical Trust. WMAC maintains that this Section (d)(4) was erroneously and inadvertently included in prior agreements. This has been disputed by Local 6. WMAC and Local 6 have agreed to delete this Health and Welfare Section (d)(4) from the current collective bargaining agreement, effective January 25, 2005, to and including January 24, 2011, recognizing that there is no obligation on the part of WMAC to make contributions to the Pensioners Hospital and Medical Trust.

In consideration for the wage increases and other promises provided for in the collective bargaining agreement between the ILWU Local 6 and Waste Management of Alameda County, Local 6 agrees on its own behalf, the ILWU International Union, and any successor or assign (collectively "the Unions"), not to engage in any strike, slowdown, or other labor action, or not to assert any right or claim, or not to being any action, now or in the future, regarding any contributions that WMAC may or would have owed under Health and Welfare Section (d)(4) or as a result of its inclusion in any prior or existing collective bargaining agreement.

WAREHOUSE UNION LOCAL NO. 6, ILWU

By:_____    Date:_____

# LETTER OF UNDERSTANDING

## NEW OPERATIONS AND WEEKEND OVERTIME

The parties recognize that Recycle America Alliance shall commence operation utilizing new equipment, technology and processes ("new processes") at its facility. The work on the new equipment or utilizing new processes will be awarded to employees by seniority pursuant to the bid process as described in Section 2 (e) of the parties' collective bargaining agreement. The bids will be posted for at least ten (10) work days and will be awarded prior to implementation of the new processes. Successful bidders will be qualified to perform their new jobs by the Company. Only employees qualified by the Company to perform work using the new processes will be eligible to perform any work including overtime.

When both RAA and the MRF are working overtime on the same weekend day senior qualified employees will perform available overtime work at their regularly scheduled location. If no such work is available at their location, employees may exercise their seniority to work in any position they are qualified to perform.

WAREHOUSE UNION,
LOCAL 6, ILWU

WASTE MANAGEMENT OF
ALAMEDA COUNTY, INC.

By: _____

By: _____

Date: _____

Date: _____

35

RECYCLE AMERICA ALLIANCE, LLC

By: _____

Date: _____

## LETTER OF UNDERSTANDING

## SEVERANCE FOR RETIREMENT

The following employees will be compensated with one (1) weeks' pay for every year of the employee's continuous service with the Company provided that he retires within five (5) years of the execution of this Agreement:

Juan Nunez

Roberto Vergil

For purposes of this Letter of Understanding, retire is defined as to voluntarily resign.

37

WAREHOUSE UNION
LOCAL 6, ILWU

By: _____
Efren Alarcon, President
Date: _12/29/05_

By: _____
Fred Pecker, Secretary-Treasurer
Date: _12/29/05_

By: _____
Victor Pamiroyan, Business Agent
Date: _December 29, 2005_

By: _____
Jose Solano, Chief Steward
Date: _____

By: _____
Jesus Avila, Assistant Steward
Date: _____

By: _____
Maria de Castillo Reyes, Committee Person
Date: _____

By: _____
Maria Aguayo, Committee Person
Date: _____

WASTE MANAGEMENT OF
ALAMEDA COUNTY, INC.

By: _____
Date: _1-23-06_

RECYCLE AMERICA ALLIANCE, LLC.

By: _____
Date: _1/24/06_

sign
here